CJF2.19.19



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Patricia McLane*
*Assistant United States Attorney*
*Patricia.McLane@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4942
MAIN: 410-209-4800
FAX: 410-962-0716

February 4, 2020

Andrew R. Szekely
Sedira Banan
Office of the Federal Public Defender
 for the District of Maryland
100 S. Charles Street, Tower II, 9th Floor
Baltimore, Maryland 21201

    Re:    United States v. Deriyana Sharnique Woodson, GLR 17-cr-00658

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Deriyana Sharnique Woodson (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by January 28, 2020, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count Two of the Superseding Indictment, which charges the Defendant with Interstate Domestic Violence resulting in Permanent Disfigurement or Life Threatening Bodily Injury to the Victim, in violation of 18 U.S.C. § 2261(a)(1) and (b)(2). The Defendant admits that she is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Superseding Indictment, in the District of Maryland:

    a.    The Defendant was a spouse, intimate partner, or dating partner of the victim;

    b.    The Defendant traveled in interstate commerce, with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner;

c. In the course of, as a result of, such travel, the Defendant committed or attempted to commit a crime of violence against the victim.

d. The Defendant's acts resulted in life-threatening bodily injury, or permanent disfigurement.

## Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| One | 18 U.S.C. § 2261(a) | n/a | 20 years | 3 years | $250,000 | $100 |

a. *Prison*: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. *Supervised Release*: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. *Restitution*: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. *Payment*: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. *Forfeiture*: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. *Collection of Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

      5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

      6.    This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein and to the following applicable guidelines pursuant to United States Sentencing Guidelines ("U.S.S.G.")

      a.    The applicable guideline for a violation of 18 U.S.C. § 2261(a)(1) is U.S.S.G. § 2A6.2 which contains a cross-reference when the offense involved the commission of another criminal offense as is the case here.

      b.    The offense guideline from Chapter Two, Part A (Offenses Against the Person) that is most applicable to the other criminal offense is U.S.S.G. § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint) and the base offense level is 32.

      c.    There is an increase of 4 levels because the victim sustained permanent injury. U.S.S.G. § 2A4.1(b)(2)(A) (Subtotal = 36).

      d.    A dangerous weapon was used resulting in a further 2 level increase. U.S.S.G. § 2A4.1 (Subtotal = 38).

      e.    The adjusted offense level for the count of conviction ("Group One") is 38.

f. This agreement contains a stipulation that specifically establishes the commission of additional offenses; specifically, the unlawful confinement and assault on a second victim and the assault of a third victim. Under the multiple count rules contained in Chapter Three, these offenses shall be treated as separate groups (Group Two and Three). For Group Two, the base offense level is 32 and a dangerous weapon was used warranting a 2 level increase (U.S.S.G. § 2A4.1) (Total = 34). For Group Three (Assault), the base offense level is 7 (U.S.S.G. § 2A2.) because a dangerous weapon was possessed.

g. Two points are added to Group One because Group Two is four levels less serious and Group Three is 9 or more levels less serious than Groups One and Two. (SUBTOTAL: 40). U.S.S.G. § 3D1.4.

h. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

i. Accordingly, the adjusted offense level is 37.

7. A pre-plea criminal history report was completed in this case and the parties believe the Defendant is a Criminal History Category II.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11 (c) (1) (C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentencing range of 10 to 20 years' imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's personal characteristics and criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw her plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge

personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw her plea.

## Obligations of the Parties

10. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of the Indictment. At the time of sentencing on the Superseding Indictment, this Office will move to dismiss any remaining counts of the Superseding Indictment and the original Indictment against the Defendant.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: one Apple MacBook Laptop Computer, one ZTE cellphone and one caliber 9 mm Luger

"Ruger" model "LC9" semi-automatic pistol bearing serial number NRA100975 and one magazine.

13. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

16. The Defendant agrees that, under Title 18 United States Code, Sections 3663A, 2259, and 3771, the Victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel), if any such costs exist or are reasonably projected. 18 U.S.C. §§ 2259, 3663A(b)(2) and (4). The Defendant further agrees that she will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. The Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

### Collection of Financial Obligations

17. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### No Contact with Victim

18. While incarcerated and throughout the entire term of her imprisonment, the Defendant will not (a) make any contact with the Victim as identified in the attached Statement of Facts, or the Victim's immediate family, and (b) take any steps whatsoever to locate the Victim. The Defendant agrees to the entry of any Protective Order regarding any contact with the Victim or immediate family that may be sought. The Defendant specifically agrees that this provision shall continue following her release and will be part of any supervised release conditions ordered by the Court at the time of sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. The Defendant waives and agrees to waive any right to challenge any prosecution based on the statute of limitations or double jeopardy and knowingly and voluntarily agrees to toll the limitations period through the end of her incarceration and supervised release.

### Defendant's Conduct Prior to Sentencing and Breach

19. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the

Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Entire Agreement

21. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

_____
Patricia McLane
LaRai Everett
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2/6/20
Date

_____
Deriyana Sharnique Woodson

We are the Defendant's attorneys. We have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises us that the Defendant understands and accepts its terms. To our knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

2/6/20
Date

_____
Andrew R. Szekely
Sedira Banan

# ATTACHMENT A – STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Defendant Deriyana Sharnique WOODSON, age 24, was a resident of Orlando, Florida. On July 30, 2017, at approximately 8:28 p.m., Baltimore County Police Department (BCPD) officers responded to a residence in Halethorpe, Maryland in reference to a home invasion. While at the residence, officers learned that WOODSON abducted VICTIM, a 17-year-old female, living at the Halethorpe residence, at knife and gunpoint. On July 31, Howard County Police recovered VICTIM and arrested WOODSON at a Holiday Inn in Elkridge, Maryland.

In May 2017, VICTIM lived with her father in Florida. VICTIM met WOODSON, through Facebook and the two began communicating over FaceTime, as well as through Snapchat, Twitter, Instagram, TextNow and other free messaging applications. VICTIM eventually met WOODSON in person and left her Florida home to be with WOODSON. VICTIM was a dating partner of WOODSON. According to police reports, VICTIM's parents reported VICTIM missing on or about July 15, 2017. From on or about July 15 through July 21, VICTIM stayed with WOODSON in a Florida hotel. WOODSON knew VICTIM was 17 years old.

On July 21, 2017, VICTIM left Florida alone on a Greyhound bus to her mother's home in Maryland. VICTIM left WOODSON so that WOODSON would not get in trouble with the police. VICTIM planned to finish high school in Maryland then return to Florida and be with WOODSON. VICTIM communicated with WOODSON using the WiFi on the Greyhound bus through Snapchat and other free texting applications.

However, WOODSON became very controlling once VICTIM arrived in Maryland. WOODSON demanded that VICTIM remain in the home and not see any friends. As a result, VICTIM stopped responding to WOODSON's requests for communication. WOODSON got upset with VICTIM and insisted VICTIM come back to Florida. WOODSON excessively called the house phone at the Halethorpe residence where VICTIM lived with her mother and grandmother. VICTIM's mother and a friend of VICTIM told WOODSON to stop calling.

VICTIM's mother reported WOODSON's calls to the police in Florida. An officer with the Kissimmee Police Department Major Crimes Unit wrote WOODSON a letter demanding WOODSON to "cease all communication attempts" with VICTIM and warning that, "felony charges might follow" based on WOODSON's "history." Upon receiving the written warning from the police, WOODSON posted the letter in redacted form on her Twitter account on or about July 28. WOODSON commented on the post words to the effect, "How are you trying to put me in jail when my probation is over only 3 days away."

WOODSON then traveled from Florida to Maryland, arriving on or about July 30, 2017. Between 8:00 and 8:30 p.m. on July 30, WOODSON entered the Halethorpe residence where VICTIM lived. VICTIM's grandmother was home alone in the basement when WOODSON arrived. The grandmother, now deceased, was 79 years old at the time. WOODSON duct taped the grandmother's hands together. When WOODSON heard VICTIM and a friend ("H") enter

the residence, WOODSON confronted the women armed with a handgun and kitchen knife. WOODSON pointed the gun at "H" and told "H" to go down to the basement. WOODSON then held the gun to VICTIM's head and ordered VICTIM into WOODSON's car. WOODSON attacked VICTIM by stabbing her with the knife and hitting her with the gun. At some point, WOODSON forced VICTIM out of the car at a residential area in Howard County and the two started running. Police later recovered WOODSON's gun and shoes in the area.

WOODSON and VICTIM eventually ended up at the Holiday Inn in Elkridge, Maryland on the morning of July 31. The hotel clerk called the police when she saw VICTIM's injuries. Howard County Police Department (HCPD) officers arrived and identified VICTIM as the minor reported missing from Halethorpe. HCPD arrested WOODSON and transported VICTIM to the hospital. VICTIM was treated for a left orbital floor fracture and multiple stab wounds to the head and hands, including one eyelid. The injury left a permanent scar on VICTIM's face.

BCPD detectives read WOODSON her rights pursuant to *Miranda* and she voluntarily waived her rights. WOODSON said she drove from Orlando, Florida to Maryland to take VICTIM back to Florida; however, WOODSON claimed VICTIM left the Halethorpe residence willingly and that VICTIM wished to return to Florida. WOODSON admitted to entering the Halethorpe residence, duct taping the grandmother and having a gun and knife; she claimed the weapons were already at the Halethorpe residence.

VICTIM told investigators that WOODSON had at least two iPhones and that WOODSON would contact her (VICTIM) using these devices. The ZTE phone was recovered in WOODSON's car after the attack. Investigators executed a search warrant on the phone and it contained a photograph of the gun and knife WOODSON used in the attack of VICTIM. The phone also contained text messages between WOODSON and VICTIM. The messages began on July 29 at 10:48 p.m. and WOODSON sent the last message on July 30 at 6:09 p.m. Contrary to her statement, WOODSON's messages with VICTIM do not reflect that VICTIM asked WOODSON to pick her up in Maryland or that VICTIM wanted to go back to Florida. Rather, the text messages corroborate that WOODSON repeatedly contacted VICTIM and was upset with VICTIM  For example, WOODSON told VICTIM "since u (sic) been up there all u been doing is trying to hurt me" and that it is "not ur fault u let ur mom call the cops on me. So what you gonna do? Idk is not a answer." On July 30, WOODSON sent a long text to VICTIM about "ignor[ing]" her, and wanting to kill herself. WOODSON later texted she wanted VICTIM to "rot in hell".

SO STIPULATED:

_____
Deriyana Sharnique Woodson
Defendant

_____
Michael S. Oppenheimer
Andrew R. Szekely
Counsel for Defendant

2